IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

------------------------------ X

UNITED STATES OF AMERICA :

    v. :

                                           Criminal No. 1:20-cr-00337-GLR

STEPHEN SNYDER, :

    Defendant. :

------------------------------ X

**FIRST MOTION OF STEPHEN L. SNYDER,
DEFENDANT, TO DISMISS INDICTMENT WITH PREJUDICE**

**(HEARING REQUESTED)**

Stephen L. Snyder, Defendant, by his undersigned counsel, moves the Court, in this First Motion to Dismiss, to dismiss the Indictment in this case with prejudice, and states:

1. The Indictment must be dismissed with prejudice because the government, during the investigation of this case, manipulated and tampered with the evidence for the specific purpose of depriving Snyder of the benefit of evidence that would have exonerated him of any potential charge of extortion or other wrongdoing and, by its very existence, would have prevented the government from bringing the present case.

2. In August 2018, the government initiated an investigation of Snyder after representatives of the University of Maryland Medical System ("UMMS") complained to the U.S. Attorney's office that Snyder had attempted to extort UMMS at a meeting two months earlier, on June 22, 2018, when Snyder had proposed that UMMS, as part of the settlement of a serious malpractice case, pay millions of dollars for settlement of his client's claim and also enter into a

1

ten-year consulting agreement for which UMMS would pay Snyder $25 million. UMMS had also complained that Snyder had threatened that, without an agreement, he would file suit for his client, publicize the claim and also advertise for similar cases.

3. As the centerpiece of its investigation, the government staged a meeting that would take place on August 23rd and would be surreptitiously recorded by the F.B.I. At the direction of the U.S. Attorney's Office, UMMS representatives told Snyder that he would need to repeat his June 22nd presentation for the benefit of a UMMS executive who had not been able to attend that meeting. *See* Memo in Support of First Motion, pp. 7-8; Motion Exhibit 6, Tr. 4:16-24, 8:1-5, 9:12-17, 13:8-24, 15:20-23, 18:1-6, 29:20-30:1.

4. At the August 23rd meeting, the UMMS representatives expressed reservations about the propriety of Snyder's proposal for the consulting agreement. Throughout the meeting, and to alleviate those reservations, Snyder emphasized that it was his intention to make a lawful and appropriate proposal and that he had consulted a highly qualified and universally well-regarded lawyer, Andrew Graham, Esq., to assure that Snyder's proposal was not inappropriate. Snyder repeatedly beseeched UMMS to meet with Mr. Graham. He also made it abundantly clear that he would walk away from his proposal if UMMS, after meeting with Mr. Graham, was not satisfied that Snyder's proposal could be effectuated ethically, morally and properly. *See* Memo in Support of First Motion, pp. 8-13.

5. At the August 23rd meeting, and in two follow-up conversations, Snyder made the following statements, among others:

- The challenge is to determine **"a legitimate"** or **"a right way"** to effectuate the proposal. (Motion Exhibit 3, Tr. 60:6-16).
- **"The question is how do we do this and feel that we did the right thing ... . How do we do it and do it the right way?"** (*Id.*)

- "I'll set up a call and a meeting [with Mr. Graham] ... . Look, if it can't be done, I don't want to do it." (Tr. 63:1-17)

- "I consulted [Mr. Graham] because I want to do it the right way." (Tr. 70:10-71:6)

- "It's just a question of can it be done and can it be done appropriately." (Tr. 151:24 - 152:2)

- "[T]ry to figure it out ethically, morally, comfortably, to see if there's a solution how to do it." (Tr. 164:16-165:17)

- "You think I wanna do something that's wrong ... now, at this stage of my ... [career] - absolutely not." (Tr. 171:10-172:16)

- "[H]opefully ... we'll figure it out. And if it can't be done then it can't be done. That's - that's just the bottom line." (*Id.*)

- "We think the next step is ... to get together with Andy." (Motion Exhibit 6, Tr. 36:13-24)

- "I think the four of us should meet." (*Id.*)

- "You want to do it the right way, and, believe me, so do I." (*Id.*)

- "So you know, again, I've been a lawyer since 1970, and I wouldn't want to do anything that jeopardizes my career at this stage of my life, either. So I mean, why do you think I went to Andy? (*Id.,* Tr. 37:17-38:20)

- "So I mean, if [Mr. Graham's] a proponent of this and he'll, right, put his neck out for me and believes it's manageable, then you guys should be cool with it. So I think we should have a global meeting, the four of us ... ." (*Id.*)

- "But [Mr. Graham] also thinks we all should meet. So because he wants you to be comfortable with the process." (Tr. 45:4-5, 11-16).

- "Sue, you should talk to Andy," and "we should meet." (Tr. 78:12)

- "Can I bring Andy Graham to the meeting. I think you would feel better with him?" (Motion Exhibit 17, K000010)

- "Andy is available [to meet with UMMS] (what do you think)," and, "I think it's a good idea but it's your call." (*Id.,* K000012)

6. Mr. Graham likewise offered to meet with UMMS to "talk through" Snyder's proposal:

3

- **"[L]ook, I'd be happy to sit down with you and [Snyder] and whoever if we - if that would help, just to - you know, everybody sit at a table and talk it through."** (Motion Exhibit 6, Tr. 75:17-20)
- **"[W]hat I suggest is we -- if we need more details, we all sit down together and hash them out."** (*Id.,* Tr. 77:35)

7. The government agents, through their eavesdropping, knew just how much Snyder wanted UMMS to meet with Mr. Graham. They also knew that such a meeting would give UMMS the opportunity to share all of the facts with Mr. Graham from the UMMS perspective and that Mr. Graham would give his opinions about the propriety of Mr. Snyder's proposal based on all facts.

8. Any opinion that Mr. Graham would give to the participants at the meeting would exonerate Snyder. If Mr. Graham believed that Snyder's proposal was proper, the expression of that opinion would corroborate Snyder's good faith belief. If Mr. Graham, after meeting with UMMS, believed that Snyder's proposal was not proper, Snyder had already said he would abandon his proposal and put an end to the discussions.

9. Acutely aware of the significance of a UMMS/Graham meeting, the government agents took steps to assure that such a meeting would not occur. Accordingly, the government instructed UMMS not to meet with Mr. Graham.

10. Snyder had been asking for a Graham/UMMS meeting, as confirmed in the quotations set out above, but UMMS had parried his requests. Finally, on September 5, Snyder insisted on a meeting the next day and asked to bring Mr. Graham with him. Susan Kinter, Esq. of UMMS responded that she "needed to think about it;" that she would "get back to [Mr. Snyder] tonight;" and that, "If I am not comfortable you can let him know not to come." *See* Motion Exhibit 6, K000010-12.

11. Kinter immediately contacted the government agents who instructed her that she should not allow Mr. Graham to attend the meeting. Three hours after her previous communication with Snyder; and heeding the government's orders, Kinter texted Snyder that, "I don't need to hear from Andy," and that, "I am fine."

12. The government's manipulation and tampering with the evidence was only unearthed when State investigators assigned to Bar Counsel's Office interviewed Kinter a year later. The investigators were naturally curious as to why UMMS would refuse to meet with Mr. Graham. Their report of the interview shows what Kinter revealed:

> The Complainant [Kinter] was asked about her September 5 text message to the Respondent [Snyder] in which she stated that she did not need to hear from Andy Graham at the planned meeting. **The Complainant [Kinter] explained that the USAO [U.S. Attorney's Office] was pushing to have the Respondent appear and present before the Board and that they were uncomfortable with Mr. Graham attending the meeting because it would be recorded.**

Motion Exhibit 9 (emphasis added).

13. The admission that the government agents made to Kinter, that they did not want UMMS to meet with Mr. Graham because they did not want to create an unimpeachable recording of the meeting, was nothing less than startling. The F.B.I., in conjunction with the U.S. Attorney's office, had made surreptitiously recordings of a meeting and nearly twenty telephone conversations because they wanted to have indisputable evidence of those communications. But when it came to the meeting that would have exonerated Snyder, the government agents directed UMMS to make sure that the meeting did not take place because they did not want that meeting to be recorded.

14. The government misconduct in destroying Mr. Snyder's opportunity for a meeting exonerating him might have lost its significance if the government had not reopened its case two

years later and indicted him. The Assistant United States Attorneys who resurrected Snyder's case, and obtained the Indictment charging him with attempted extortion, were aware of the government misconduct that had occurred during the investigation when they pushed forward with the prosecution. While they may not have had a hand in the government's misconduct when it first occurred, they had obtained a copy of Bar Counsel's file and knew of Kinter's revelation to the State investigators.

15. Whatever the constitutional consequences of the government's misconduct might have been in 2018, they certainly ripened into a full-fledged violation of Snyder's right to due process of law, guaranteed by the Fifth Amendment to the U.S. Constitution, when the government indicted Snyder and required him to defend himself after the government had engaged in outrageous misconduct that deprived Snyder of the very evidence that would have exonerated him beyond any doubt. The government only compounded its initial misbehavior by charging Snyder with crimes that it knows Snyder did not commit and when the government knew that government agents had manipulated and tampered with the evidence to gain an unfair advantage and to deprive Snyder of his right to have a complete defense. *See* Memo in Support of First Motion, pp. 23-35.

16. The government's outrageous misconduct requires that the Indictment be dismissed with prejudice because, among other things: (1) the government agents manipulated and tampered with the evidence, and deprived Snyder of the evidence that would have exonerated him, in bad faith and with the intent to prejudice Snyder if he was ever charged with extortion; (2) The evidence that Snyder lost was "material exculpatory" evidence; (3) Snyder had suffered real and substantial prejudice as a result of the government's misconduct; (4) There is nothing speculative or undetermined about the prejudice that Snyder has suffered; and (5) There is no reasonably

comparable substitute for the evidence that the government caused Snyder to lose.  *See* Memo in Support of First Motion, pp. 23-35.

17. Snyder incorporates herein his Memorandum in Support of First Motion to Dismiss and his Memorandum in Support of Second Motion to Dismiss.

Wherefore, Stephen L. Snyder, Defendant, moves the Court to enter an Order dismissing the Indictment with prejudice.

Respectfully submitted,

_____/s/_____
Arnold M. Weiner, Bar No. 01605
aweiner@rwllaw.com
Stuart A. Cherry, Bar No. 28012
scherry@rwllaw.com
RIFKIN WEINER LIVINGSTON LLC
2002 Clipper Park Road, Suite 108
Baltimore, MD 21211
Phone:  (410) 769-8080
Fax:  (410) 769-8811

*Counsel for the Defendant.*

### REQUEST FOR HEARING

Stephen L. Snyder, Defendant, respectfully requests a hearing on this Motion pursuant to Local Rule 105(6).

_____/s/_____
Arnold M. Weiner, Bar No. 01605
aweiner@rwllaw.com
Stuart A. Cherry, Bar No. 28012
scherry@rwllaw.com
RIFKIN WEINER LIVINGSTON LLC
2002 Clipper Park Road, Suite 108
Baltimore, MD 21211
Phone:  (410) 769-8080
Fax:  (410) 769-8811

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 22nd day of June, 2021, the within Second Motion Of Stephen L. Snyder, Defendant, To Dismiss Indictment With Prejudice was served on Government counsel via ECF electronic filing.

<pre>
                           /s/
              Arnold M. Weiner, Bar No. 01605
</pre>