**RWL | RIFKIN WEINER LIVINGSTON LLC**
ATTORNEYS AT LAW

| | | | | |
|---|---|---|---|---|
| Alan M. Rifkin | Arnold M. Weiner | Scott A. Livingston (MD, DC) | Michael V. Johansen | Joel D. Rozner (MD, DC) |
| M. Celeste Bruce (MD, DC) | Charles S. Fax (MD, DC, NY)† | Jamie Eisenberg Katz (MD, DC, NY) | Barry L. Gogel | Liesel J. Schopler (MD, DC) |
| Stuart A. Cherry | Stephen Kuperberg (MD, DC) | Rita J. Piel | Michael D. Berman (MD, DC)† | Brad I. Rifkin |
| Camille G. Fesche (MD, DC, NY, NJ) | Madelaine Kramer Katz (MD, DC, VA) | Michael T. Marr (MD, DC, VA, NC) | Devon L. Harman | Laurence Levitan†† |
| Edgar P. Silver (1923-2014) | Michael A. Miller† | | Lance W. Billingsley†† | |
| †Of Counsel | | | | John C. Reith (Nonlawyer/Consultant) |
| ††Retired Emeritus | | | | Matthew Bohle (Nonlawyer/Consultant) |
| | | | | Obie L. Chinemere (Nonlawyer/Consultant) |

February 2, 2022

**VIA HAND-DELIVERY & ECF**

Hon. George L. Russell, III
c/o Clerk's Office
U.S. District Court for the District of Maryland
101 W. Lombard Street, 4th Floor
Baltimore, MD 21202

      Re:    *United States v. Snyder,* Cr. No. 1:20-cr-00337-GLR

Dear Judge Russell:

      I write to address the United States' Opposition to [Docket No. 85] (the "Opposition"), filed on January 31, 2022 opposing my letter of January 18, 2022, requesting that the Court schedule a hearing on the Defendant's *Brady* motion in advance of the scheduled June 2, 2022 hearing for consideration of the Defendant's Motions to Dismiss.

      Unfortunately, the Government has chosen to argue the merits of both the *Brady* motion and the Defendant's First Motion to Dismiss instead of addressing the efficiency that would be promoted by hearing the *Brady* motion prior to the substantive motions to dismiss. In doing so, moreover, the Government sets forth an inaccurate and incomplete statement of the facts and totally overlooks the facts that Snyder had provided to the Court in his reply to those arguments when they were first made by the Government.

      In its Opposition, the Government merely repeats the ill-conceived merits arguments that the Defendant has already rebutted. *First,* the Government is wholly mistaken when it asserts that the material sought by the Brady motion cannot be exculpatory because the alleged criminal conduct occurred before the prosecutors directed the UMMS representatives that they were not to meet with attorney Andrew Graham, Esq. ("Graham") to discuss the issues raised by Snyder's proposed consultancy with UMMS. In Defendant's Reply brief [Docket Nos. 79 and 81] at pp. 25-31, Snyder discredits this argument, making the following points:

(1)    The Indictment alleges that Snyder's conduct "between January and October 2018" was all part of one "scheme." The Government does not allege that Snyder had one intent at the beginning of the "scheme" and another one towards the end of the same "scheme." Thus, any evidence that defeats criminal intent, whether at the beginning

| | | |
|---|---|---|
| 225 Duke of Gloucester Street, Annapolis, Maryland 21401 | 2002 Clipper Park Road, Suite 108, Baltimore, Maryland 21211 | 4800 Hampden Lane, Suite 820, Bethesda, Maryland 20814 |
| 410.269.5066 \| 410.269.1235 fax | 410.769.8080 \| 410.769.8811 fax | 301.951.0150 \| 301.951.0172 fax |

www.rwllaw.com

Hon. George L. Russell, III
February 2, 2022
Page 2

(1) or end of the alleged scheme, is exculpatory and exonerating. *See* Reply at pp. 25-27.

(2) There is nothing unusual about the proposition that acts and statements late in a course of conduct, or even after the course of conduct has ended, are probative of the intent with which the actor engaged in the entire course of conduct. *See* Reply at p. 27.

(3) Any evidence that Snyder could present to demonstrate his innocent intent during the investigation would be equally applicable to demonstrate his innocent intent at the beginning of the alleged scheme and at the end. *See* Reply at pp. 27-30.

(4) Susan Kinter, the head of UMMS claims, contends that Snyder first began to extort UMMS at a June 2018 meeting when, she says, he sought a $25 million consultancy for himself. Kinter and Natalie Magdeburger, a UMMS outside lawyer, both acknowledge, however, that, at the June meeting and shortly thereafter, Snyder also urged them to contact Mr. Graham to discuss Snyder's proposal so they could determine whether Snyder's proposal could be effectuated. *See* Reply at pp. 27-30.

(5) The Government has confirmed to Kinter that it directed the UMMS representatives not to meet with Mr. Graham precisely because it did not want there to be a recording of such a meeting between Mr. Graham and UMMS representatives. This also confirms the Government's view of how extraordinarily beneficial such evidence would be to Snyder's case. *See* Reply at 31.

(6) The case against Snyder is already weak. An experienced prosecutor declined to prosecute under the facts as we know them. In that context, lost or omitted evidence is "material" if it is capable of creating reasonable doubt, particularly when the case "is already of questionable validity." *U.S. v. Agurs*, 427 U.S. 97 (1976) at 112-13. *See* Reply at pp. 30-31.

*Second,* the Government argues incorrectly that the statements between Graham and Magdeburger in a recorded call on August 27, 2018, indicate that another recording of Graham could not have been exculpatory. In the call between Magdeburger and Graham, which the Government staged, the *Brady* information will show that the Government agents instructed Magdeburger to refrain from telling Graham about UMMS' concerns. Reply at 39. During the August 27th call, moreover, Graham suggested the very meeting that the Government prevented from occurring. The recording of the 27th call shows that Graham asked that UMMS meet with Snyder and himself, so that "everybody" could "sit at a table and talk it through." *Id.* A recording of such a proposed meeting is exactly what the Government prevented from occurring because the

Hon. George L. Russell, III
February 2, 2022
Page 3

Government knew that, with such a recording, Snyder could conclusively show that he was not "hiding information from Mr. Graham or acting with criminal intent requisite for attempted extortion. And, if the Government had not blocked the meeting, the mere fact that it occurred would have established Snyder's innocence." Reply at 33-34.

      Precisely because of the merits issues, the details of the instructions that the Government agents gave the UMMS representatives not to meet with Mr. Graham are exactly what should be fleshed out at a *Brady* hearing before the Motions to Dismiss are heard. For the reasons that are set forth in my letter of January 18, and are reiterated here, we request that the Court conduct its hearing on the *Brady* issues in advance of the hearing on the motions to dismiss because an early hearing on the *Brady* motion can only assist the Court when it later considers the merits of the motions to dismiss.

      Very truly yours,

      /s/

      Arnold M. Weiner

AMW:emk

cc:    Leo J. Wise
       Matthew Phelps
          Assistant United States Attorneys
       Stuart A. Cherry, Esq.
       Devon L. Harman, Esq.