**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STEPHEN L. SNYDER,<br><br>Defendant | Criminal No. DLB 20-337 |

**UNITED STATES' OMNIBUS MOTION IN LIMINE**

The United States of America, by its undersigned counsel, submits this Omnibus Motion in Limine to exclude certain evidence at the forthcoming trial in this matter.

On October 5, 2020, the Grand Jury for the District of Maryland indicted Snyder for attempted extortion, in violation of 18 U.S.C. §§ 1951 and 1952. *See United States v. Snyder*, 1:20-cr-00337-DLB, ECF No. 1 (hereinafter "Indictment"). The charges stemmed from Snyder's attempt to extort $25 million from the University of Maryland Medical System ("UMMS") disguised as a sham consulting arrangement. Trial is scheduled to begin on November 12, 2024.

**I.      MOTION IN LIMINE NO. 1**

The Government moves in limine, pursuant to F.R.E. 401 and F.R.E. 403, to preclude Snyder from attacking the timing of the charges in the case and, relatedly, from personally attacking the prosecutors.

In his First Motion to Dismiss the Indictment, Snyder argued that the U.S. Attorney's Office procured the Indictment two years after declining to prosecute Snyder for the extortionate conduct in issue. (ECF No. 52, First Memo in Support of Motion to Dismiss, at 22-23). Snyder asserted that an Assistant United States Attorney determined not to prosecute because of Snyder's "potential advice of counsel defense." (*Id.* at 22). Thereafter, another federal prosecutor reviewed

the evidence and determined that charges should be brought.  At the hearing on Snyder's motions to dismiss, Snyder attacked the attorney for the government.  After a fulsome hearing at which Snyder presented argument for more than two hours, the Court denied Snyder's motions to dismiss, noting that differences in the thought process of one prosecutor versus another prosecutor, were not dispositive in assessing the sufficiency of the Indictment.  (ECF No. 210).  The Court also instructed Snyder to refrain from making personal attacks against the prosecutors.  (*Id.*).

The Court should preclude Snyder from presenting evidence concerning the timing of the charges.  This information is not probative of the defendant's guilt or innocence, and any minimal probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury.  F.R.E. 401, 403.  The jury must consider the evidence, which will be comprised of witness testimony, recorded conversations, videos, notes of meetings, and other documents, and determine whether Snyder's conduct was extortionate and violated the Travel Act, not which federal prosecutors brought charges and when those prosecutors brought charges.

Similarly, the Court should preclude Snyder, as it did at the motions hearing, from making personal attacks against the prosecutors, which are not probative of any fact of consequence. F.R.E. 401; *see U.S. v. Holmes*, 413 F.3d 770, 775 (8th Cir. 2005) ("[P]ersonal unsubstantiated attacks on the character and ethics of opposing counsel have no place in the trial of any criminal or civil case.").  Try as Snyder might to deflect, this trial should be about Snyder's conduct, not about the prosecutors' conduct.

For all of the foregoing reasons, the government respectfully requests that the Court preclude Snyder from attacking the timing of the charges in the case and from personally attacking the prosecutors, because such information is not relevant and poses a substantial risk of unfair prejudice, confusing the issues, and misleading the jury.

## II.      MOTION IN LIMINE NO. 2

The Government moves in limine, pursuant to F.R.E. 401 and F.R.E. 403, to preclude Snyder from presenting information concerning the charging decisions by the Maryland Attorney Grievance Commission.

Following the conclusion of Snyder's extortion scheme, but before he was charged criminally, the Maryland Bar Counsel instituted a disciplinary action against Snyder.  The complaint by Bar Counsel, however, did not charge Snyder with violating M.A.R.P.C. 8.4(b), which makes it professional misconduct to "commit a ***criminal act*** that reflects adversely on the attorney's honesty, trustworthiness, or fitness as an attorney in other respects." M.A.R.P.C. 8.4(b) (emphasis added).  Snyder has argued previously that he did not commit extortion as evidenced by the fact that Bar Counsel did not charge him with extortion.

Snyder should be precluded from arguing to the jury that Maryland Bar Counsel also investigated Snyder's conduct which forms the basis for the Indictment and determined that Snyder should not be charged with committing any criminal act.  Charging decisions by the Attorney Grievance Commission, which investigates and prosecutes attorneys whose conduct violates the Maryland Attorney's Rules of Professional Conduct, are not dispositive of the investigative and charging decisions of the federal government. The charging considerations of Bar Counsel should have no bearing on the jury's determination of the issues in the present federal criminal case.  This information is not probative of the defendant's guilt or innocence, and any minimal probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury.  F.R.E. 401, 403.

For all of the foregoing reasons, the government respectfully requests that the Court preclude Snyder from referencing the decision by Bar Counsel not to charge Snyder with having

committed a criminal act under M.A.R.P.C. 8.4(b), because such determination is not relevant and poses a substantial risk of unfair prejudice, confusing the issues, and misleading the jury.

### III.     MOTION IN LIMINE NO. 3

The United States is moving to preclude Snyder from eliciting evidence about his health for the purpose of creating sympathy for the jury.  At most proceedings since Snyder has been *pro se*, he has engaged in discussion about his health even though his health has not been the subject of any proceeding.  Because of this history, the Government is asking the Court to order Snyder not to discuss his health to the jury, as doing so would likely be for the purpose of creating sympathy with the jury.

### IV.     MOTION IN LIMINE NO. 4

The United States is moving to exclude the testimony of Jonathan Schraub and Kenneth Feinberg.

#### A.  The anticipated testimony of Schraub and Feinberg.

Snyder may call two witnesses who will testify about his talents as an attorney and that, in their opinion, Snyder's talents warranted a $25 million consultancy with UMMS.[1]  Specifically, Schraub is expected to testify that, "Value is almost always subjective and dependent on the position of the parties," "the hospital was in a serious – potentially fatal – economic and reputational risk position," Snyder had collected "upwards of $100 million for suits against the hospital," "Snyder's proposed consulting agreement . . . offered real value to the hospital," and $25 million was a "reasonable value."  *See* Aug. 30, 2022 Schraub Disclosure Email, attached as Exhibit 1.

---

[1] These two disclosures took the form of an email.  The disclosures did not comport with the current version of Rule 16(a)(1)(G), but the revised rule was not in place at the time of Snyder's original disclosure.

Snyder may also call Feinberg, who worked with Snyder once in a complex mediation, and who may testify that Snyder is "thoroughly prepared, extremely persuasive, and dogged in his representation." *See* Aug. 26, 2022 Feinberg Disclosure Email, attached as Exhibit 2.[2]  Feinberg's opinion will "go directly to the question of the value that Mr. Snyder's services would have brought to UMMS as a consultant." *Id.*

### B.  Standard for the Admissibility of Expert Testimony

Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert witness testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise, if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court emphasized that Rule 702 requires district courts to perform a critical "gatekeeping" function concerning the admissibility of expert scientific [and technical] evidence. *See Daubert*,509 U.S. at 588; *Kumho*, 526 U.S. at 152. "Implicit in the text of Rule 702, the Daubert Court concluded, is a district court's gatekeeping responsibility to 'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert*, 509 U.S. at 597).

---

[2] Snyder did not explicitly state that Feinberg was an "expert," however, Snyder disclosed Feinberg when he was disclosed his other expert witnesses, and he will be offering an "opinion."

*Daubert* establishes that Rule 702 focuses on two threshold inquiries: relevance and reliability. The "relevance" component requires the court to find that the proposed testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. "Simply put, if an opinion is not relevant to a fact at issue, Daubert requires that it be excluded." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021).  The "reliability" component requires the court to "ensure that the proffered expert opinion is 'based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods.'" *Nease*, 848 F.3d at 229 (quoting *Oglesby v. Gen. Motor Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)).  Even when the expert testimony is not scientific, the court must ensure that the opinion "rests on a reliable foundation." *United States v. Willock*, 696 F.Supp.2d 536, 547 n. 25 (D. Md. 2010) (quoting *Daubert*, 509 U.S. at 597).  The court has "broad latitude" in determining whether an opinion is reliable. *Kumho Tire Co.*, 526 U.S. at 142.

Furthermore, "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### C.  Schraub and Feinberg are not relevant or helpful to the jury.

The elements of Hobbs Act extortion are:

First, that the defendant wrongfully obtained the property of another;

Second, that the defendant obtained this property with the victim's consent, but that this consent was compelled by the wrongful use or threat of force, violence, or fear; and

Third, that, as a result of the defendant's actions, interstate commerce, or an item moving in interstate commerce, was delayed, obstructed, or affected in any way or degree.

3 Modern Federal Jury Instructions-Criminal P 50.02 (2024).  The Hobbs Act also criminalizes

the attempt to engage in the foregoing.  18 U.S.C. § 1951(a).  Consistent with these elements, the

Government alleges that Snyder committed extortion when he told the University of Maryland

Medical System to, essentially, "pay me, or else."

Schraub and Feinberg may really believe that a plaintiff's attorney living in Florida was

worthy of being the highest paid employee for the University of Maryland Medical System from

age 71 to 81, but those beliefs do not relate to any element of extortion or any defense.[3]  Being a

good lawyer or having leverage over your opponent is not an excuse to commit extortion.  These

experts also cannot inform the jury's evaluation of whether the $25 million consulting agreement

was a sham.  They lack first-hand knowledge of the events at issue, and they cannot testify about

Snyder's intent.

### D.  The opinions of Schraub and Feinberg are unreliable.

The Court should further exclude Schraub and Feinberg because their opinions do not rest

on a reliable foundation.  Neither expert has worked for a hospital.  Schraub's disclosure states

that he negotiated "expert consulting agreements," but does not expound on how that experience

relates to the $25 million consulting agreement at issue here.     Neither expert has seen the

consulting agreement that was prepared by Snyder's attorney, Andrew Graham.  That agreement

was a two-page letter where the compensation and the term of the consultancy were both blank.

See Aug. 30, 2018 Email and attachment, attached as Exhibit 3.  Snyder has apparently told his

hired experts that his consulting arrangement was for 10 years and $25 million but he did not tell

---

[3] According to publicly available tax records, the UMMS tax filings in 2018 indicated that its
CEO, Mohan Suntha, earned approximately $2.5 million that year.
https://apps.irs.gov/pub/epostcard/cor/521362793_201806_990_2019052916355325.pdf

his own attorney who prepared the consulting agreement.  The witnesses cannot testify about a consulting agreement that they have never seen.

Neither witness addresses how the hospital could obtain value by conflicting Snyder out of future cases when there are dozens or more attorneys in Baltimore who could bring those same cases.  Further, Schraub's statement that Snyder "has collected upwards of $100 million from suits against the hospital," does not appear to be supported by anything other than Snyder's self-serving representations.  Neither witness has explained how Snyder and the CEO of UMMS should be compensated the same.

Neither witness addresses the conflict of interest presented by Snyder trying to obtain employment from UMMS while representing M.S. in a claim against UMMS.  Further, neither witness addresses the potential violation of Maryland Rule of Professional Responsibility 19-305.6(b), which prohibits an attorney from agreeing not to represent other clients as a condition of a settlement for a client.  Neither witness discusses the actual advice that Snyder received from another attorney, which said that he should have turned over two-thirds of any purported consulting fee payments to his client, M.S.  *See* June 21, 2018 Email from McNutt, attached as Exhibit 5.

Schraub will opine that the "hospital was in a serious – potentially fatal – economic and reputational risk position," however, he has not reviewed any economic or financial data that would suggest his opinion is anything other than a regurgitation of the threats Snyder made when he was committing extortion.  Further, Schraub contradicts himself.  Schraub will apparently testify that "value is almost always subjective," but that, in his view, Snyder was worth $25 million.  If the value to UMMS is subjective, then we should ask UMMS if they think Snyder adds value, not Schraub.

Feinberg's opinion is based on a single encounter with Snyder in a "complex mediation." *See* Exhibit 2 at 2-3.  "I worked with Snyder once and he's worth $25 million" is not a reliable opinion.

For these reasons, the Court should find that the opinions of Feinberg and Schraub are unreliable.

### E. The opinions of Schraub of Feinberg will confuse the jury, mislead the jury, and will be a waste of time.

Even if the Court sees any probative value in the testimony of Schraub and Feinberg, the testimony is substantially outweighed by the considerations in Rule 403.   Their testimony may confuse or mislead the jury into thinking that if Snyder was a good lawyer, or that if he sued UMMS a lot in the past, then he was not being extortionate when he sought $25 million.  As explained above, Snyder's skills as an attorney do not inform any element of extortion or any defense to extortion.  Such testimony is likely to confuse the jury, mislead the jury, and waste the jury's time.

### F.  Feinberg's opinion is inadmissible character evidence.

Under Rule 404, evidence of a person's character is generally not admissible, except in a criminal case, "a defendant may offer evidence of the defendant's pertinent trait."  Fed. R. Evid. 404(a)(2)(A).  As explained previously, Feinberg, who worked with Snyder once in a complex mediation, will testify that Snyder is "thoroughly prepared, extremely persuasive, and dogged in his representation."  *See* Exhibit 2.  His opinion does not speak to any character trait that is pertinent to extortion or to Snyder's character for truthfulness should he testify.  His opinion is inadmissible character evidence.

## V.   MOTION IN LIMINE NO. 5

The Government is moving under Rule 403 to limit the testimony of three of Snyder's hybrid experts, Antonio Di Carlo, MD, CM, FACS, FRCSC, Jesse Schold, Ph.D., M.Stat., M. Ed., and Bruce D. Charash, MD.  *See* Snyder Hybrid Expert Disclosure, attached as Exhibit 4.  Snyder retained these experts to assist him in his representation of two medical malpractice plaintiffs who are identified as Client 1 and Client 2 in the Indictment.  The United States agrees that because these three experts are fact witnesses and were advising Snyder during the relevant events that there is some probative value to their testimony.  The Government is not seeking specific relief at this time, but we wanted to bring this issue to the Court's attention, as the Defendant is likely trying to distract the jury by making the trial about UMMS's conduct instead of his own.

Dr. Di Carlo advised Snyder as to both his representation of L.B. (Client 1) and J.S. (Client 2).  According to the Disclosure, Dr. Di Carlo provided opinions "concerning the negligence of UMMC and two of its surgeons in connection with the pancreas transplant procedure performed on" Client 1.  Exhibit 4 at 4.  Dr. Di Carlo also gave the opinion that "the transplantation of a low quality kidney with a high KDPI score (97 of 100) into [Client 2], who was 60 years of age, was not medically justified."  *Id.*  Dr. Di Carlo also apparently provided information on "systematic deficiencies and dysfunction" of the UMMC transplant department, "disarray and turnover," and an "exodus of surgeons."  *Id.*  at 4-6.

Dr. Schold is the Director of Outcomes Research in Kidney Transplantation at the Cleveland Clinic.  *Id.* at 7.  Dr. Schold advised Snyder about UMMC's kidney transplant statistics. *Id.*  Dr. Charash, a cardiologist, advised Snyder as to his client, L.B.  *Id.* at 8.  According to Dr. Charash, L.B.'s cardiac condition was too unstable to undergo a pancreas transplant.  *Id.*

10

The United States does not object to Snyder calling these witnesses as fact witnesses; however, their testimony should be limited. Snyder represented medical malpractice claimants, and UMMS settled with those claimants for significant sums. These basic facts are not in dispute and are not any element of the Government's extortion claim. Snyder did not commit extortion when he demanded that UMMS pay his clients for their losses caused by medical negligence. He committed extortion when he said, "pay *me*, or I will destroy the transplant program." Unless these three experts advised Snyder to extract $25 million for himself with threats of destroying the UMMS transplant program, then their testimony is of minimal relevance. Snyder should not be permitted to transform his own extortion trial into another round of attacks against UMMS. To do so would likely confuse and mislead the jury, would delay the trial, and would be a waste of time. It would also be unfair to the victim.

## VI.   MOTION IN LIMINE NO. 6

The Government moves in limine to exclude the testimony of Jack Marshall.

### A.  The anticipated testimony of Marshall.

Snyder may call attorney witness Jack Anderson Marshall to testify that "UMMS and some of its personnel acted unethically, and perhaps illegally, during the negotiations between UMMS and Mr. Snyder." *See* Jun. 1, 2024, Correspondence (ECF No. 203 at 2). Snyder further explained that Marshall "may testify to resolve any factual disputes or opinion offered that may arise, should the government find any in its response to our expert designations." The disclosure, which took the form of correspondence to the Court and included Marshall's curriculum vitae, did not otherwise comport with Fed. R. Crim. P. 16(b)(1)(C).

11

**B. Marshall is not relevant or helpful to the jury and his opinion is not reliable.**

Marshall, who is an attorney with experience in ethics, may believe that representatives of UMMS, some of whom were also attorneys, acted unethically when they recorded – surreptitiously -- a meeting with Snyder on August 23, 2018.  Although it is not clear from the two-sentence designation Snyder has provided, Marshall may rely on Maryland Courts & Judicial Proceedings § 10-402(a-b), which makes it unlawful for any person to record any wire, oral, or electronic communication without the consent of all parties to the recording.  Federal law, however, permits such recordation so long as at least one party to the communication gives consent. 18 U.S.C. § 2511(2)(d).

Marshall's proposed testimony is not relevant to the charges against Snyder.  Marshall's testimony about the supposed ethical failings of the victims here in their interactions with Snyder, cannot inform the jury as to whether Snyder committed extortion when he told UMMS to pay him $25 million or face a smear campaign.  Marshall's opinion also rests on the false premise that the recordings, which were in coordination with federal law enforcement, were somehow unlawful or inappropriate, which the government disputes.  To the extent that Snyder challenges the recordings, the defendant must do so through a motion to suppress evidence, rather than through expert testimony, which is not relevant or reliable, and will confuse and mislead the jury and waste time.  Fed. R. Evid. 403.

For these reasons, the Court should exclude the testimony of Marshall.

Erek L. Barron
United States Attorney


___/s/_____
Matthew P. Phelps
Evelyn Cusson
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this filing was served on the defendant via first class mail to the

following address:

Stephen L. Snyder
7307 Park Heights Avenue, Apt. 200
Encore Building,
Pikesville, Maryland 21208

___/s/_____
Matthew P. Phelps