1  before there were recordings.  We know there are the text

2  messages.  Really, anything that you could argue is favorable

3  to the defense they've got.

4       And so now what they want is, well, tell us what you think

5  about the evidence.  Well, they're not entitled to that because

6  it's not *Brady*.  What I think about the evidence doesn't

7  exculpate Mr. Snyder.  What Mr. Phelps thinks about the

8  evidence, what prior counsel thinks about the evidence doesn't

9  exculpate Mr. Snyder.  And if that were the case, then every

10 time a prosecutor has some doubt about a case, it would become

11 a disclosable event.

12      I mean, the U.S. Attorney's Office, without going into

13 specifics, it's not like we run to the grand jury and indict

14 cases.  These kinds of cases are vetted really at the highest

15 levels, and I don't think I'm giving anything away.  They also

16 go before committees, indictment review committees, and you

17 hash it out.  What are the defenses?  What are the weak points?

18 And you have kind of open -- and this is what we want, right.

19 This is what the public wants, that we're not going off

20 half-cocked, that we kick the tires, and find out where the

21 blind spots or the weak spots, whatever metaphor you want to

22 use.  According to them, all of that's *Brady* then.

23      In these indictment review committees, some people vote

24 against the indictment.  Well, that would have to be, that

25 would have to be *Brady*.

Defendant's Exhibit

5