IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal No. DLB-20-337 |
| | * | |
| STEPHEN L. SNYDER | * | |
| | * | |

**MEMORANDUM AND ORDER**

This case was referred to me for an attorney inquiry hearing. ECF 305. The referral was prompted by self-represented Defendant Stephen Snyder's request to terminate his pro se status and for the appointment of his standby counsel (Gerald Ruter) as his attorney. ECF No. 303. The Court held an attorney-inquiry hearing on December 10, 2024, and the hearing was open to the public. Mr. Snyder, Mr. Ruter, and Government counsel were present for the entirety of the hearing. For the reasons stated on the record, and for the reasons set forth below, the Court orders as follows:

**I.   Mr. Snyder Will Continue to Represent Himself**

Mr. Snyder requests that he be permitted to rescind his self-represented status and that counsel be appointed to represent him under the Criminal Justice Act.[1] *See* ECF No. 303. "There is broad consensus that, once waived, the right to counsel is no longer unqualified." *United States v. Cohen*, 888 F.3d 667, 681 (4th Cir. 2018). Courts consider three factors when a pro se defendant attempts to reassert his right to counsel: "(1) the defendant's motive in seeking to rescind his pro se status; (2) the timeliness of the renewed request for counsel; and (3) the balance of the

---

[1] Mr. Snyder did not express any intention of hiring retained counsel at the hearing.

1

defendant's interests and the countervailing public interest in proceeding on schedule." *United States v. Hunt*, 99 F.4th 161, 182 (4th Cir. 2024) (citing *Cohen*, 888 F.3d at 681) (internal quotation marks omitted). The right to self-representation "does not exist . . . to be used as a tactic for delay, for disruption, for distortion of the system, or for manipulation of the trial process." *Cohen*, 888 F.3d at 681 (quoting *United States v. Frazier-El*, 204 F.3d 553, 560 (4th Cir. 2000)).

Mr. Snyder argues that he should be permitted to reassert his right to counsel because he had not contemplated the possibility that he would be admonished in front of the jury for failing to abide by the governing rules and procedures during trial. He states that he no longer wishes to represent himself and that he does not believe he is capable of effectively advocating for himself.

It is telling that Mr. Snyder waited until he was convicted to raise concerns about his ability to represent himself (and his competency more generally). The Court spent extensive time warning Mr. Snyder against self-representation and questioning his ability to effectively mount a defense without the assistance of counsel. The Court specifically cautioned Mr. Snyder that he would be held to the same standard as any other attorney and that if he did not follow the rules, he could be admonished before the jury. Mr. Snyder repeatedly rejected these warnings, insisting that he was more qualified than any other attorney to defend against the charges. Mr. Snyder's post-verdict explanation for his change of heart rings hollow.

The Court also considers Mr. Snyder's conduct and demeanor during the hearing. It is clear that Mr. Snyder intends to control his case, whether or not he is represented by counsel. For example, even as Mr. Snyder explained why Mr. Ruter should be appointed to represent him, he could not help but criticize Mr. Ruter's abilities (while reminding the Court how remarkably successful Mr. Snyder was as a plaintiff's lawyer). He repeatedly interrupted Mr. Ruter while he was addressing the Court. And when the Court asked Mr. Ruter why he did not raise the issue of

Mr. Snyder's competency earlier in the proceedings, Mr. Snyder interjected. He said he "would have gone bonkers" if Mr. Ruter had claimed he was not competent. He would have been "so furious" that he "would have wanted to kill him." Considering the record, the Court finds that Mr. Snyder's motive in seeking the appointment of counsel is not sincere. Instead, his purpose is to cause disruption and to delay the sentencing hearing.

This case has been pending since 2020 and sentencing is less than three months away. If the Court were to appoint new counsel, there is no question that sentencing would be postponed. New counsel would need time to review the pretrial and trial transcripts, the discovery produced by the Government, and the evidence presented against Mr. Snyder at trial. Counsel would likely seek to second-guess strategic decisions that Mr. Snyder made during trial, effectively giving Mr. Snyder a second chance at litigating issues that have already been decided. Allowing such a tactic would cause tremendous delay and undermine the fair administration of justice. Considering Mr. Snyder's steadfast insistence—at least until the time of his conviction—that he is a master of litigation and that he is the attorney best situated to defend against the charges, any benefits to Mr. Snyder are substantially outweighed by the interests of the public in bringing this case to a conclusion. For these reasons, Mr. Snyder's request to rescind his self-represented status and for the appointment of counsel to represent him (ECF No. 303) is **DENIED**.

**II.      Gerald Ruter Is Terminated as Standby Counsel**

On December 6, 2024, about two weeks after the jury returned its verdict, Mr. Ruter filed a document titled "Defendant's Renewed Motion for Judgment of Acquittal, or in the Alternative, Motion for a New Trial" (ECF No. 304). In this Motion, Mr. Snyder argues that he was not competent to represent himself at trial and that he was not competent to waive his right to counsel. *Id.* at 13. The Motion recounts Mr. Ruter's personal observations of Mr. Snyder's conduct during

trial and in the months leading up to it. Mr. Ruter expounded on these observations during the hearing.

Under the "Attorney as Witness" rule, which is codified in the Maryland Attorneys' Rules of Professional Conduct,

> An attorney shall not act as advocate at a trial in which the attorney is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the attorney would work substantial hardship on the client.

Md. Rule 19-303.7.

When considering removing counsel from a case under this rule, courts consider "the materiality of the advocate-witness's evidence; the exclusivity of the advocate-witness as the source of the evidence; and the prejudice to the advocate-witness's client." *EEOC v. Bardon, Inc.*, No. RWT-08-1883, 2010 WL 323067, at *1 (D. Md. Jan. 19, 2010) (quoting *Franklin v. Clark*, 454 F. Supp. 2d 356 (D. Md. 2006)). When a potential conflict between an attorney's roles as advocate and witness are obvious, the attorney in question bears the burden of demonstrating that disqualification is not warranted. *Man & Mach., Inc. v. Seal Shield, LLC*, No. PJM-14-1829, 2016 WL 5457722 (D. Md. Sept. 28, 2016).

The Court finds that Mr. Ruter could become a "necessary witness" if Mr. Snyder pursues a competency claim. Mr. Ruter has personal knowledge of Mr. Snyder's conduct throughout this case. The issue of Mr. Snyder's competency could be contested at a hearing and Mr. Ruter's testimony could be material to the resolution of the issue.[2] Fortunately, disqualification of Mr.

---

[2] Although it is an issue for Judge Boardman to decide, the undersigned doubts that the allegations in Mr. Snyder's Motion (ECF No. 304) are even sufficient to raise the issue of competency, let alone that a hearing would be necessary to resolve the issue. A competency hearing is only required "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist

Ruter from serving as Mr. Snyder's standby counsel will not work "substantial hardship" on Mr. Snyder. Mr. Snyder has represented himself since December 2023. Trial has concluded and sentencing is more than two months away. The Court is confident that new standby counsel can be appointed without any prejudice to Mr. Snyder. The Clerk of Court shall **TERMINATE** Gerald Ruter as standby counsel in this case.

Because Mr. Ruter is barred from serving as Mr. Snyder's standby counsel under Md. Rule 19-303.7, he is also barred from serving as Mr. Snyder's lead counsel (if Mr. Snyder were permitted to abandon his self-represented status). For this alternative reason, Mr. Snyder's request for the appointment of Mr. Ruter as his lead counsel (ECF No. 303) must be denied.

### III. Justin Brown Is Appointed as Replacement Standby Counsel

The Court will appoint C. Justin Brown as Mr. Snyder's new standby counsel. Standby counsel's role will be limited and directed only at assisting Mr. Snyder as he prepares for the sentencing hearing.[3] Standby counsel is not expected to play an active role in defending Mr.

---

properly in his defense." 18 U.S.C. § 4241(a). The undersigned has conducted multiple hearings with Mr. Snyder—both before and after trial—and has always considered him to be legally competent. Without exception, Mr. Snyder has been able to engage with the Court's inquiries, present his arguments, and request relief from the Court. Mr. Snyder has had no difficulty answering the substance of the Court's questions and has always demonstrated an understanding of the nature of the proceedings and the charges against him, his role as a self-represented defendant, the role of the Government counsel, the role of defense counsel in general, and the role of judge and jury. Every decision that the undersigned has observed Mr. Snyder make was a strategic one aimed at convincing the presiding judge that the charges against him should be dismissed or that the jury should find him not guilty. And at every hearing, Mr. Snyder has reminded the Court of his outstanding reputation as a plaintiff's attorney, a reputation that he insists is well-earned and based on his ability to "uncomplicate the complicated." Mr. Snyder's legal strategy in this case may have been ill-thought and unsuccessful, but it was still a strategy formed by a legally competent defendant (who himself is an attorney). In the view of the undersigned, Mr. Snyder has been legally competent at all times because he has always been able to understand the nature and consequences of the proceedings against him and to properly mount a defense (with and without the assistance of counsel).

[3] "[A] pro se defendant has no Sixth Amendment right to standby counsel or hybrid representation, and district courts have broad discretion to decide how much assistance, if any,

Snyder, but is rather appointed to answer Mr. Snyder's questions and to assist with specific tasks as appropriate. Standby counsel will be responsible for the following tasks:

1. Answering Mr. Snyder's legal questions about substantive and procedural issues related to sentencing.
2. Preparing Mr. Snyder for the Presentence Report interview and attending the interview with him (although the Court understands the interview may have already taken place).
3. Answering Mr. Snyder's questions about the purpose of sentencing; the United States Sentencing Guidelines; the statutes relevant to sentencing (including 18 U.S.C. § 3553); the factors the Court considers in imposing a sentence; sentencing procedure in this Court; the types of sentences available in this case; how Mr. Snyder can advocate for himself at sentencing (including allocution); how Mr. Snyder may call witnesses and present evidence at sentencing; how Mr. Snyder may prepare and submit a sentencing memorandum; how Mr. Snyder may request designation to a specific Bureau of Prisons facility if a term of imprisonment is imposed; and how Mr. Snyder may request self-surrender to the Bureau of Prisons if a term of imprisonment is imposed.
4. Helping Mr. Snyder with the logistics of filing documents on CM/ECF, including requests to travel or modification of his conditions of release, identification of sentencing witnesses, and a sentencing memorandum.
5. Helping Mr. Snyder with the logistics of filing proposed sealed documents on CM/ECF, including medical records or other documents containing highly personal information.
6. Helping Mr. Snyder communicate with mitigation witnesses regarding the place, date, and time of the sentencing hearing.
7. Being reasonably available to meet with Mr. Snyder, taking his phone calls when available, and responding to correspondence when appropriate.
8. Helping Mr. Snyder file a notice of appeal once he has been sentenced, if Mr. Snyder chooses to appeal.

In addition to setting its expectations of what standby counsel will do, the Court will set limits on what standby counsel may not do. Standby counsel may not allow their role to transform into a type of hybrid representation, where Mr. Snyder represents himself for some purposes and standby counsel represents him for other purposes. Mr. Snyder has elected to represent himself

---

standby counsel may provide." *Hunt*, 99 F.4th at 184. *See also McKaskle v. Wiggins*, 465 US. 168, 183 (1984) ("A defendant does not have a constitutional right to choreograph special appearances by counsel.").

6

and will do so through sentencing. The Court will exercise its discretion to place the following limits on the role of standby counsel:

1. Standby counsel may not draft documents for Mr. Snyder to sign and file, including post-trial motions or replies in support of post-trial motions; responses to any filings made by the Government; responses or objections to the Presentence Report; a sentencing memorandum; and responses or objections to the Government's sentencing memorandum.
2. Standby counsel may not "ghost write" documents for Mr. Snyder to sign and file.
3. Standby counsel may not present arguments on behalf of Mr. Snyder in Court.
4. Standby counsel may not assist Mr. Snyder in filing any interlocutory appeal or any notice of appeal before the time of sentencing.
5. Standby counsel may not personally interview mitigation witnesses.
6. Standby counsel may not personally serve subpoenas on witnesses.

## IV.     Mr. Snyder Will Pay for His Standby Counsel

Although the Court has appointed standby counsel to assist Mr. Snyder pursuant to the Criminal Justice Act, it appears to the undersigned that Mr. Snyder may have sufficient resources to contribute financially toward the payment of fees. Under the Guide to Judiciary Policy,

> If a person's net financial resources and income . . . are in excess of the amount needed to provide the person and that person's dependents with the necessities of life and to provide the defendant's release on bond, but are insufficient to pay fully for retained counsel, the judicial officer should find the person eligible for the appointment of counsel under the CJA and should direct the person to pay the available excess funds to the clerk of the court at the time of such appointment or from time to time after that.

Guide to Judiciary Policy, Vol. 7A, Ch. 2, § 210.40.40; *see also* Plan for Implementation and Administration of the Criminal Justice Act, District of Maryland, Section IV, Part B, Subsection 2(g) ("If at any time after the appointment of counsel a judge finds that a person provided representation is financially able to obtain counsel or make partial payment for the representation, the judge may terminate the appointment of counsel or direct that any funds available to the defendant be paid as provided in 18 U.S.C. § 3006A(f).")

In accordance with this policy, the Court orders that Mr. Snyder shall reimburse the Court for the cost of services provided by his standby counsel (both Mr. Ruter and Mr. Brown). The amount that Mr. Snyder will be required to contribute will be determined by the presiding judge at a later date.

The Clerk of Court shall send a copy of this Order to Mr. Snyder.

Date: December 11, 2024                         /s/
                                                Timothy J. Sullivan
                                                Chief United States Magistrate Judge